# CIRCUIT COURT OF WASHINGTON COUNTY

In re Estate of
W. C. DeBusk, Sr.

January 21, 1999

Case No. 96-214

BY JUDGE CHARLES H. SMITH, JR.

I have completed my review of this file which has been submitted to me for final decision. In my review, I have considered the pleadings and exhibits filed therewith, the depositions and exhibits filed therewith, the transcript, and counsels' memoranda submitted in support of their respective positions. I have, likewise, considered the testimony received at the hearings in this matter on August 11, 1998, and September 22, 1998, the court's personal view of the property in question, and arguments of counsel. In consideration of all of which, the court finds as follows.

This matter involves a contest over the estate of the late W. C. DeBusk, Sr. Mr. DeBusk was a well-known, well-respected, and successful local businessman and farmer. Mr. DeBusk had a reputation for being hardworking and frugal, and he had amassed quite a substantial estate at the time of his death on October 4, 1996. Mr. DeBusk left a will dated July 7, 1988, in which he devised his considerable estate to his surviving blood relatives, the natural objects of his bounty, his only living son, W. C. DeBusk, Jr., and two children of a deceased daughter, Mary C. (Cindy) McCall Hockett and William Douglas (Chip) McCall. Mr. DeBusk was survived by his second wife, Lemmie Hagy DeBusk, but she is not directly involved in this litigation. Mr. DeBusk's will was probated in the clerk's office of this court on October 9, 1996, and is of record in Will Book 137, at Page 82. W. C. DeBusk, Jr., was named as executor of the will and qualified as such.

Significant to this analysis are the following provisions of the will:

Third: I give, bequeath, and devise my home on Route 75, Abingdon, Virginia, and approximately six acres of land, the line to run from a point on State Route 75 to the north end of the lake; thence east across the north end of the lake to the Motley property line; thence with the Motley property line to the west boundary line of my property adjacent to Route 75; thence along Route 75 to the point of beginning, to Cindy McCall Hockett, my granddaughter.

Fourth: I give and bequeath all personal property located within my home and upon the above-described property to Cindy McCall Hockett, my granddaughter.

Other specific bequests were made to Cindy and to Chip; W. C. DeBusk, Jr., was named a sole residuary legatee.

To say that a rift has developed between Cindy and the executor, W. C. DeBusk, Jr., would be an understatement. While it would appear that this rift has been a long time in the making, it certainly has become more pronounced since the will was probated. Hostilities have heightened between Cindy and her husband and W. C. DeBusk, Jr. There have been several incidents of verbal abuse, threats of abuse, and actual physical assaults. They have even resorted to having criminal warrants issued against one another. Indeed, W. C. DeBusk, Jr., does not even attempt to mask his extreme resentment, disgust, and animosity toward Cindy. This was readily observable to the court in the two *ore tenus* hearings that were conducted herein. He displayed an arrogant and belligerent attitude at these hearings and had to be constantly called down by the court and even threatened with contempt. It would seem that W. C. DeBusk, Jr., takes issue with the bequests made to Cindy in his father's will. This would seem to be borne out by the fact that right after his father's death, W. C. DeBusk, Jr., changed the locks on the house even though he was aware that it and all of the property in it had been specifically devised to Cindy. Also, he failed to distribute a penny of the $150,000.00 specifically devised to Cindy until he was ordered to do so by the court even though the estate has liquid assets worth well in excess of $1,000,000.00.

Cindy initiated a petition in this court on May 9, 1997, seeking to have W. C. DeBusk, Jr., removed as executor of this estate and to be denied any fee as executor. She alleged that he should be removed due to a conflict of interest and/or certain nonfeasance and misfeasance of office. W. C. DeBusk, Jr., filed a response to this petition on July 23, 1998, generally denying the allegations of the petition. In his cross-petition, he requested certain relief, including that the court decree what personal property actually belongs to Cindy and for the

court to establish a boundary line between the property devised to Cindy and that devised to W. C. DeBusk, Jr.

As indicated above, one of the provisions of the will devised to Cindy "all personal property located within my home and upon the above-described property … ." Cindy contends that the testator, by this provision, intended that she was to receive not only that personal property that was actually physically found upon the devised premises at the actual moment of his death, but also any and all personal property that was routinely or customarily kept at and located upon the premises. The executor contends that the testator intended that she receive only that personal property that was actually physically upon the property at the exact moment of the testator's death. The court is of the opinion that the law of the Commonwealth supports the position taken by the petitioner. That being the case, the petitioner will receive not only all of the personal property that was actually physically located upon the devised premises at the exact moment of the testator's death (excluding that which we know specifically belonged to the executor) but also all of that personal property which was routinely or customarily kept at and upon the premises. This will include all of the personal property identified in the petitioner's memorandum.

The court is also of the opinion that with regard to the personal property, Cindy is also entitled to the amounts claimed for sale of the cattle and misuse of the truck.

As noted above, the testator was survived by his second wife, Lemmie Hagy DeBusk. The two of them had executed a prenuptial agreement in which she had renounced any entitlement to his estate. After his death, she sought to have the prenuptial agreement declared invalid on account of fraud and misrepresentation. A settlement was reached in that litigation under the terms of which she was paid the sum of $200,000.00 in full settlement of her claims. The executor claims that Cindy should be required to contribute toward the payment of this on a *pro rata* basis. She claims that this payment was simply settlement of a disputed claim over the validity of the marital agreement and, as such, does not subject her specific bequests to anything at all, but the payment is duly charged against the residuary estate. The court is of the opinion that the law of the Commonwealth on this issue is as stated in the petitioner's memorandum and will so rule.

The petitioner contends that the executor has failed to properly administer the estate. Specifically, he failed to properly carry out the specific bequest of $150,000.00 to her, until he was ordered to do so by the court on August 25, 1998. She claims interest on this $150,000.00 from one year after the date of the death of the testator until the date of the payment of $100,000.00, and

interest on the remaining balance of $50,000.00 from the date of the initial payment until such time as a final distribution is made. The executor concedes that this is the law of the Commonwealth. See § 64.1-68 and § 6.1-330.53 of the Code. The court will so order.

Both parties have requested that the court decree a boundary line between the portion of the homeplace devised to Cindy and that portion devised to W. C. DeBusk, Jr. The applicable clause of the will is stated above. It is noted that the testator intended that Cindy have "approximately six acres of land." A survey of this property which was made at the request of W. C. DeBusk, Jr., in November of 1996 reveals that the tract contains some 12.23 acres. The court is, of course, bound to give effect to the intention of the testator to the extent same can be ascertained from a close reading of the "four corners" of the will. The court is also guided by the general rules of construction with regard to wills. Also, the court is guided by its own view of the property in question as well as the testimony given by the scrivener of the will, Joseph P. Johnson, Jr., Esq., as to the testator's intention. The will is the voice of the testator speaking from the grave. Although written by another, this will was validly executed and declared to be the last will and testament of W. C. DeBusk, Sr. Thus, he was aware of the specific language utilized. The court is guided here by that language as well as the clarifying testimony of Mr. Johnson who testified that the testator indicated to him, when they were upon the property together discussing the division, two points of reference, a gate located a few feet from Route 75 (Greensprings Road) just at the north end of the driveway that goes to the homeplace and a tree at the north end of the lake. Mr. Johnson indicated that the testator realized that W. C. DeBusk, Jr., would need the gate to access his property. With that in mind, the description given starts "from a point on State Route 75." Just where it starts is a point of contention. The petitioner contends that a line should start at a point on State Route 75 and run perpendicular to Route 75 across the north end of the pond, where the creek begins to widen, to the Motley line (now Hylton). The trouble with this is, first, the testator obviously knew his property and he knew directions, and second, is the testimony of Mr. Johnson. This is significant because the next call commences with the words "thence east." This clearly evinces a change of direction contemplated by a testator who knew he was going in one direction and needed to change courses. This would not have been the case had he been going east to begin with, perpendicular to Route 75, as the petitioner suggests. Thus, on this issue, the court agrees with the interpretation and survey submitted by the executor and will so rule.

The petitioner suggests that the executor should be removed from office and forfeit any fee. As the petitioner correctly notes, there is no more sacred

document than a person's last will and testament. A person appointed as executor of a will is a fiduciary and is required to exercise the highest fidelity and utmost good faith in dealing with the estate. He is required to adhere strictly to the directions of the will and not to do any act that would be in conflict "with the interests of the beneficiaries under the will for whose benefit the directions were intended." She charges that he has been derelict in his duties, willfully self-serving in his administration, and has subverted and distorted the very clear wishes of his father. Specifically, she points out that the executor has essentially failed to execute anything, that what has been done has been left to his wife and others, that he has converted personal property to his own use, that he has intentionally devalued assets of the estate for personal gain, that he has continuously exhibited a hostile, uncooperative, and resentful attitude toward her as beneficiary, and has refused and failed to distribute that to which she was specifically entitled or to allow her the use of property rightfully bequeathed to her, etc. The court is of the opinion that the record fairly bears this out. In this regard, the court need look no further than the attitude and demeanor of the executor displayed during the hearings in this court. As the petitioner aptly notes in her memorandum, "it is difficult to imagine a setting or circumstance under which W. C. DeBusk, Jr., should feel more strongly compelled to act in a respectful manner and give the impression of fairly performing the duties and obligations required of him as executor than during an appearance before the Circuit Court of Washington County." Given this, the court can only imagine how this has played out outside of court.

The only problem with the suggestion of the petitioner that the executor be removed and forfeit any fee is that the court wonders what practical effect this could have since he is the executor and the sole residuary legatee and the estate is, according to him, substantially administered. Thus, the denial of a fee would be of very little consequence since it comes out of the residuary estate. The court will deny this request. However, the court will require the executor to post a bond with corporate surety in the amount of $100,000.00 for the faithful execution of his duties. The court will further order the executor to close out this estate within ninety days of entry of the order herein if a closing letter has been received from the IRS. Further, the final order should direct the clerk to furnish an attested copy of same to the court's commissioner of accounts. The commissioner shall review this estate with an eye toward imposing any statutory sanctions that may be applicable.